UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
  UNITED STATES OF AMERICA,

                   -against-

  KAREEM DAVIS,
                                   Defendant.
------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/12/2020

17 Cr. 610-16 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

Following a jury trial, Defendant Kareem Davis was convicted of conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), murder in aid of a RICO conspiracy and use of a firearm. Defendant moves for a judgment of acquittal pursuant to Rule 29,[1] or in the alternative, seeks a new trial pursuant to Rule 33. For the reasons below, the motions are denied.

### I. Background

At trial, the Government presented evidence that Defendant and his brother Gary Davis shot and killed Bolivia Beck on April 18, 2011, in an outdoor space at the Mill Brook Houses ("Mill Brook"), in the Bronx, New York. The shooting was part of an ongoing rivalry between two Mill Brook gangs, Killbrook and MBG. Kareem and Gary, who were members of Killbrook, had intended to shoot Joey Colon, a member of MBG and the victim's boyfriend, who was standing next to Ms. Beck at the time of the shooting. The shots missed Mr. Colon and struck Ms. Beck.

Shortly after the shooting, Gary Davis was identified as one of the two shooters, but the second shooter -- *i.e.* Defendant Kareem Davis -- was not indicted until the December 18, 2019, Superseding Indictment (the "Indictment"). The Indictment charged Kareem Davis with three

---

[1] All references to "Rules" are to the Federal Rules of Criminal Procedure.

counts: (1) racketeering conspiracy in violation of 18 U.S.C § 1962(d), (2) murder in aid of racketeering in violation of 18 U.S.C. § 1959(a), and (3) use of a firearm to commit murder in violation of 18 U.S.C. § 924(j). At trial, Gary Davis and Joey Colon testified, pursuant to cooperation agreements, that Defendant was the second shooter. An immunized Government witness and former Killbrook member, Jose Rodriguez, testified that Defendant told him that he, Kareem Davis, was the second shooter. The victim's sister, Lavena Beck, also testified that Mr. Colon had told her in 2011, consistent with his trial testimony, that Defendant was the second shooter.

Defendant's post-trial motions contend that he was falsely identified as the second shooter. In the Rule 29 motion, Defendant argues that the Government's evidence is insufficient to prove beyond a reasonable doubt that he was the second shooter. At the close of trial, Defendant made this motion, on which the Court reserved, which he now renews. In the Rule 33 motion, Defendant argues that the admission of Lavena Beck's testimony, as a prior consistent statement by Mr. Colon, was improper and prejudicial and warrants a new trial. At trial, the Court orally denied Defendant's motion *in limine* to exclude Lavena Beck's testimony, which was based on similar arguments as those raised now.

## II. SUFFICIENCY OF THE EVIDENCE

### A. Rule 29 Standard

Defendant's motion for a judgment of acquittal under Rule 29 is denied. Rule 29 requires a defendant to show that "no rational trier of fact, viewing the evidence in the light most favorable to the government, could have found [defendant] guilty beyond a reasonable doubt of the essential elements of the crimes charged." *United States. v. Desena*, 287 F.3d 170, 176 (2d Cir. 2002); *accord United States v. Lee*, 834 F.3d 145, 152 (2d Cir. 2016). "A defendant challenging the sufficiency of the evidence bears a heavy burden." *Lee*, 834 F.3d at 152. The

2

Court considers "items of evidence not in isolation but in conjunction . . . [and] defer[s] to the jury's evident assessments of the credibility of the witnesses and its resolution of the weight of the evidence." *United States v. O'Brien*, 926 F.3d 57, 79-80 (2d Cir. 2019). The Court "credit[s] every inference that the jury could have drawn in the government's favor . . . , [and] must affirm the conviction so long as, from the inferences reasonably drawn, the jury might fairly have concluded guilt beyond a reasonable doubt." *Id.* at 80.

B. **Discussion**

Although Defendant "moves to dismiss all counts of the Indictment," his argument that "no reasonable juror could conclude that Kareem Davis was one of the two shooters in the murder of Bolivia Beck" bears on only two of the three counts in the Indictment -- murder in aid of racketeering and use of a firearm to commit murder. The motion does not challenge the evidence supporting racketeering conspiracy. Nor does the motion challenge any elements of the charged crimes besides the identity of Defendant as the second shooter. Accordingly, only the sufficiency of evidence as to the identity of Defendant as the second shooter is addressed here. Viewing the evidence in the light most favorable to the Government, a rational trier of fact had ample basis to conclude beyond a reasonable doubt that Kareem Davis was the second shooter.

At trial, Gary Davis, one of the two shooters, expressly testified that both he and his brother, Defendant Kareem Davis, shot the victim. Gary provided detailed testimony about the conflict with Mr. Colon and MBG leading to the shooting, the decision with other Killbrook members to shoot Mr. Colon, and preparations the two brothers made for the shooting in Defendant's bedroom -- retrieving firearms and donning hoodies to obscure their identities. Gary Davis testified how, after the shooting, they immediately fled the scene and discarded their guns with other Killbrook members. He also testified how personally "close" he and Kareem Davis were. The Government introduced significant evidence of Facebook photos, showing

3

Gary and Kareem together, with captions referencing their Killbrook membership, around the time of the shooting. Although Gary Davis was prosecuted alone for the murder in state court from 2011 to 2016 and then acquitted, and was indicted in this federal action in 2017, he did not identify Defendant as a shooter until around September 2019. Gary Davis testified that he was "doing the right thing by not telling on" Defendant until then, because "that's street code, not to snitch." As he testified, "they was only after me, so I didn't say anything else to nobody." But later, Gary Davis "had to sit down and think about what [he] was doing." As he testified, "during my life I put everybody before me, so I had to just put myself first and my freedom." Gary Davis acknowledged that he was testifying pursuant to a cooperation agreement, in hopes of receiving a letter from the Government to support a more lenient sentence.

The Government also offered the testimony of Mr. Colon, the intended victim of the shooting, that he saw that the second shooter was Defendant. When asked how Mr. Colon identified Defendant, he testified "I know Kareem." He testified that he had hung out with Defendant "a lot" before their gangs were "beefing," and he knew Defendant, his family and friends well. Shortly before the shooting, Mr. Colon and Ms. Beck bumped into Defendant, Gary Davis, and a few other Killbrook members on the street. Gary Davis' testimony corroborated this account. Indeed, it was shortly after this encounter, per Gary Davis' testimony, that he and Defendant went to prepare for the shooting. Similarly, Mr. Colon testified that he had "a weird feeling in [his] stomach" after the encounter, and told Ms. Beck that he "didn't want to stay out long." On their walk back to Ms. Beck's home, he grew increasingly worried because everyone they had just seen "was gone." Shortly thereafter, Mr. Colon testified that he heard gunshots suddenly, and then saw Defendant and Gary Davis shooting at him. He also testified that Defendant fled first and then Gary Davis fled. Mr. Colon realized that Ms. Beck had been shot and was lying wounded next to him.

In addition to Gary Davis' and Mr. Colon's direct accounts, the Government also offered the testimony of Mr. Rodriguez and Lavena Beck, who both learned that Defendant was the second shooter. Mr. Rodriguez testified that Defendant told him in 2012 that Defendant was a shooter, had intended to hit Mr. Colon, but Ms. Beck had been "in the wrong place, wrong time." Lavena Beck testified that Mr. Colon had told her in 2011 that Defendant was one of the shooters.

A reasonable jury could, and did, conclude beyond a reasonable doubt that Defendant was the shooter from the totality of the evidence. Defendant argues on this motion that none of these witnesses is credible, because: (1) Gary Davis and Mr. Colon, as cooperators, were motivated to lie and confirm the Government's theory that the second shooter was Defendant, after they had failed to identify Defendant for years, (2) Gary Davis and Mr. Colon were not trustworthy witnesses given their admitted history of lying under oath and to law enforcement, (3) Mr. Colon could not reliably perceive the shooters during the chaos of the shooting, (4) Mr. Rodriguez was testifying out of fear of arrest for his Killbrook activities and was subject to an immunity order, and (5) Ms. Beck never identified Defendant as a shooter in her prior testimony in the New York state court trial. The Court, however, must defer to "the jury's evident assessments of the credibility of the witnesses and its resolution of the weight of the evidence." *O'Brien*, 926 F.3d at 79-80. The concerns Defendant raises do not foreclose a jury from crediting these witnesses or key portions of their testimony. For example, although Defendant argues that these witnesses' late identification of Defendant raises doubts, the jury may credit the witnesses' explanations for the delay. Gary Davis, a principal witness, testified how personally close he was to his brother the Defendant, how he had put his brother first by shielding his identity from law enforcement for years, and how generally he did not "snitch." Only when faced with the reality of life in prison was he motivated to yield on that loyalty. The jury

5

reasonably could have credited this explanation. Although the defense argues that Gary Davis' desperation motivated him to lie to conform to the Government's theory, it is also reasonable that his desperation simply motivated him to testify truthfully about the facts which conformed to the Government's theory. Indeed, a reasonable jury may have found Gary Davis credible *because* of his personal relationship with Defendant, given the unique gravity of a brother falsely attesting that his brother had committed murder. Similarly, in considering Mr. Colon's and Lavena Beck's allegedly inconsistent positions on the second shooter over time, the jury reasonably could have credited their trial testimony, rather than any earlier inconsistent positions. Regarding his perception, Mr. Colon admitted on cross-examination that the shooting happened in mere seconds, that he initially mistook the gunshots as firecrackers, and that he saw the hoodied shooters only from hundreds of feet away and from a side view. But Mr. Colon also testified that he was very familiar with Defendant, had just seen him moments before, and a jury reasonably could infer that Mr. Colon would recognize Defendant's gait or figure from afar. Lavena Beck moreover corroborated Mr. Colon's identification. Given these factors, a jury could reasonably assign some weight to Mr. Colon's eyewitness account. Likewise, the jury could reasonably determine that Mr. Rodriguez did not fabricate his account of Defendant's admission, even if a fear of arrest motivated him to testify. Taken together, the foregoing evidence is sufficient for a reasonable jury to conclude beyond a reasonable doubt that Kareem Davis was the second shooter.

## III. New Trial

### A. Rule 33 Standard

Under Federal Rule of Criminal Procedure 33, a district court may "vacate any judgment and grant a new trial if the interest of justice so requires." In evaluating a Rule 33 motion, the court must "examine the entire case, take into account all facts and circumstances, and make an

objective evaluation," keeping in mind that the "ultimate test" for such a motion is "whether letting a guilty verdict stand would be a manifest injustice." *United States v. Alston*, 899 F.3d 135, 146 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 1282 (2019). While the Court has "broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29," it must nonetheless "exercise the Rule 33 authority sparingly and in the most extraordinary circumstances." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (quotation marks omitted); *accord United States v. Bayuo*, No. 15 Cr. 576, 2019 WL 430260, at *1-2 (S.D.N.Y. Feb. 4, 2019).

## B. Discussion

Defendant argues that the admission of Lavena Beck's testimony was improper, "deprived Mr. Davis of a fair trial and due process of the law," and therefore vacatur of the guilty verdict is necessary. This argument is unpersuasive.

As the Court orally ruled at trial, the testimony that Mr. Colon told Ms. Beck in 2011 that Kareem Davis was the second shooter was properly admissible as a prior consistent statement, under Federal Rule of Evidence 801(d)(1)(B). This rule provides that a statement is not hearsay "[if] the declarant testifies and is subject to cross-examination about a prior statement, and the statement . . . is consistent with the declarant's testimony and is offered . . . to rebut an express or implied charge that the Declarant recently fabricated it or acted from a recent improper influence or motive in so testifying." Fed. R. Evid. 801(d)(1)(B)(i). The Court explained:

> On cross, defendant's line of questioning suggested that, until Mr. Colon faced federal charges in 2017, he had never identified defendant as the second shooter. Defendant charges that Mr. Colon fabricated his testimony that he saw Kareem Davis shoot at the victim to gain the benefits of cooperating with federal prosecutors only in 2017 and afterwards. Lavena Beck will testify, however, that consistent with Mr. Colon's direct testimony, he had stated back in 2011, before the alleged fabrication in 2017, that the defendant was a shooter. Accordingly, Mr. Colon's 2011 statement, offered through Lavena Beck's testimony, is admissible . . . . The testimony is also admissible under subparagraph [801(d)(1)(C)] which permits admission of a prior statement that identifies a person as someone the declarant perceived earlier.

7

Tr. at 764-65.[2] The defense challenges the admission now because (1) Mr. Colon was "fabricating" claims about the second shooter even before his statement to Lavena Beck and therefore the hearsay exception does not apply, and (2) the statement was inadmissible under Federal Rule of Evidence 403 because it was more prejudicial than probative.

The defense seems to argue, because Mr. Colon made a series of inconsistent statements about whether he knew who the second shooter was even before speaking with Lavena Beck, he already "had a motive to fabricate" by the time he spoke with her. Therefore, any statement subsequent to this motive arising is not admissible under Federal Rule of Evidence 801(d)(1)(B)(i). This argument misconstrues what the applicable "improper influence or motive" is. Simply because Mr. Colon may have had his own motives to dissemble to law enforcement immediately after the shooting is irrelevant to this analysis. The "improper influence or motive" that the Government sought to rebut was Mr. Colon's motive to curry favor with the Government, when he realized in 2017, the severity of federal charges he faced. In Mr. Colon's cross, defense counsel implied that, only when confronted with this reality during a car ride with federal agents in 2017, did Mr. Colon belatedly decide to provide testimony supporting the Government's theory that Defendant was a shooter. The purported "fabrication" was therefore Mr. Colon's testimony at trial. The alleged fabrication was "recent" in that, between 2011 and 2017, Mr. Colon never identified Defendant as a shooter to law enforcement. Consequently, evidence that Defendant had in fact made a similar statement to Lavena Beck in 2011, *before* the alleged "improper influence or motive" arose in 2017, squarely fits the definition of a prior consistent statement. Although admission of such a statement invariably prejudices the party seeking to show an improper influence or motive, the prejudice here did not

---

[2] "Tr." refers to the trial transcript in this action.

overwhelm the probative value, under Federal Rule of Evidence 403, where a key issue is Mr. Colon's identification of Defendant as a shooter.

In any case, admission of the statement did not create such a "manifest injustice" as to necessitate a new trial. *Alston*, 899 F.3d at 146. As discussed above, the evidence that Defendant was the second shooter was sufficient due to the *totality* of witness testimony. Lavena Beck's statement was not dispositive, and in any case, its effect was only to provide some support for the testimony of another witness, Mr. Colon. Mr. Colon's was not the sole testimony implicating Defendant. Wholly apart from Mr. Colon, the Government offered the testimony of Gary Davis that the Defendant, his brother, was the second shooter. Because the jury could have relied on all or any part of the evidence against Defendant, the admission of Lavena Beck's testimony was proper and did not deprive Defendant of a fair trial.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for a judgment of acquittal or, in the alternative, a new trial, is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 558.

Dated: March 12, 2020
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE