

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*One St. Andrew's Plaza*
*New York, New York 10007*

June 2, 2021

**BY ECF**
The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    <u>United States v. Kareem Davis</u>, 17 Cr. 610 (LGS)

Dear Judge Schofield:

    The Government respectfully submits this letter in connection with the sentencing of defendant Kareem Davis, which is scheduled for June 7, 2021 at 11:00 a.m.  On April 18, 2011, the defendant and his brother, Gary Davis, plotted to kill rival gang member, Joey Colon, instead striking and killing Colon's girlfriend Bolivia Beck.  That day, the defendant and Gary Davis saw Colon walking with Bolivia by the Mill Brook Houses.  They went to get their guns and waited until they saw Colon and Bolivia again.  As Bolivia and Colon went to greet Colon's grandparents, the defendant and Gary Davis ran up to them and fired at least twelve times.  Colon heard the shots, turned to see Gary Davis and the defendant shooting, and then looked down to see Bolivia on the ground with a bullet hole in her head.  Bolivia was taken to the hospital, but it was too late; she was placed on a ventilator and died a few days later.

    For years, the defendant thought he had gotten away with murder.  While Gary Davis faced state and then federal charges for the murder, the defendant remained at liberty, protected by the code of the streets that gang members don't talk.  But in 2018 – more than seven years after Bolivia was killed –that all changed.  The defendant was charged with being a member of Killbrook and killing Bolivia, and a jury swiftly found him guilty of these crimes.  A life sentence for the defendant is not only required by statute but is necessary to reflect the extreme depravity of the defendant's actions, to incapacitate him from committing further acts of violence, and to provide some sense of peace and closure to Bolivia's family.

    I.    <u>Background</u>

        A.  <u>Offense Conduct</u>

           1.  <u>Gang Activity</u>

    The defendant was a member of the Killbrook gang, which operated in the Mill Brook Houses in the South Bronx.  (Presentence Investigation Report, dated March 10, 2020 ("PSR") ¶¶ 27, 30).  Mill Brook is located on a hill, where the hill slopes from uphill in the East to downhill in the West.  (*Id.* at ¶

27). For more than a decade, two gangs have operated in the area of Mill Brook – Killbrook, which was the defendant's gang, and its rival, MBG. (*Id.* at ¶¶ 26-27). Killbrook was based "down the block" in Millbrook, while MBG operated "up the block." (*Id.*). Killbrook members, including the defendant, engaged in acts of murder, robbery, and the distribution of controlled substances, including crack cocaine and marijuana. (*Id.*) At trial, fellow Killbrook members Gary Davis and Jose Rodriguez testified about different robberies the defendant committed as part of his membership in Killbrook. (*See* Tr. 277-290). These witnesses also testified about the defendant's selling crack cocaine in Mill Brook. (Tr. 290-91).

Beginning in 2007, Mill Brook became the center of a violent feud between Killbrook and MBG members. (PSR ¶ 29). The feud started after Colon shot at Giovanny Eligio, an individual from "down the block." After that, MBG and Killbrook members routinely shot at one another, including at a baby shower in 2010. (*Id.* at ¶ 29). Gang members reached a truce in 2010 but that truce fell apart in 2011. (*Id.* at ¶ 29). The tragic murder of Bolivia Beck led to a renewed spike in violence, as Colon tried to retaliate against any Killbrook member, and especially the defendant, for killing his girlfriend. (*Id.* at ¶ 30).

2. <u>The Murder of Bolivia Beck</u>

As described in greater detail at trial in this case, (*see* Tr. 612-626), on April 18, 2011, Colon and Bolivia were walking to the hair salon, which was located in the "down the block" section of Mill Brook. Bolivia had just gotten a promotion at work and they were going out to celebrate. The two passed Gary Davis, the defendant and other members of Killbrook who were standing outside of a bodega. Colon engaged in small talk with the defendant whom he had not seen for some time.

After a brief stop, Colon and Bolivia continued on their way. While at the hair salon, Colon got a queasy feeling in his stomach and decided to leave. As they walked back "up the block" to Bolivia's apartment, Colon noticed that all of the Killbrook members who had been outside earlier were no longer there. This made Colon suspicious. Colon and Beck entered Mill Brook and walked to meet Colon's grandparents who were coming around the back of one of the buildings. As Colon and Bolivia were about to greet his grandparents, Colon heard what sounded like fireworks. He turned around and saw the defendant and Gary Davis shooting at him before running off down the block. As he turned back, Colon saw that Bolivia was on the ground bleeding from her head.

Colon called 911 as a crowd started to gather. Within minutes, an ambulance arrived on scene and tended to Bolivia but she was already non-responsive. Colon went with Bolivia to the hospital. There, she underwent surgery, but it was too late. She was placed on a respirator and died a few days later.

Meanwhile, the defendant and Gary Davis fled the scene, running back to a friend's apartment where they dropped the guns. Word quickly spread on the block that the police were looking for Gary Davis. A few days later, Gary Davis turned himself in. (Tr. 271). The defendant remained at large, however. Colon learned that another witness had identified Gary Davis (but not the defendant) as the shooter and Colon similarly identified Gary Davis. (Tr. 647). Colon planned to find the defendant on the street and get his revenge through violence. (Tr. 649). Despite trying a handful of times, Colon was unable to retaliate against the defendant. (Tr. 673-75).

Hon. Lorna G. Schofield
June 2, 2021
Page **3** of **4**

After the murder, the defendant told a fellow Killbrook member, Jose Rodriguez, that he and his brother tried to kill Colon but instead killed Bolivia. (Tr. 459-60). The defendant told Rodriguez that Gary shot first and that he shot second, using a .32 caliber gun. (Tr. 460).[1] That testimony was consistent with the ballistics evidence indicating that it was the defendant's bullet – from a .22 caliber gun – that killed Bolivia. (Tr. 813). When asked how the defendant appeared when he told Rodriguez about the murder, Rodriguez explained just how callous the defendant was – "[h]e was like nonchalant about it, like he was talking about dropping a cup of water or something." (Tr. 461).

### B. **Criminal History**

The defendant has three prior convictions for narcotics, firearms possession, and robbery, for a total of eight criminal history points. (PSR ¶¶ 95-97). The defendant also committed the instant offense while on parole, resulting in two additional criminal history points. (*Id.* at ¶ 99). In total, the defendant has ten criminal history points and is in Criminal History Category V.

### C. **The Guidelines**

For purposes of the Guidelines, Counts One through Three are grouped. (PSR ¶ 85). The base offense level is 43 because the offense constituted first-degree murder. (PSR ¶ 86). At offense level 43 and Criminal History Category V, the Guidelines range is life, which is also the mandatory minimum sentence on Count Two.

## II.  **Discussion**

The Court has no choice but to impose a mandatory life sentence on Count Two. That sentence is fair, appropriate, and consistent with the Section 3553(a) factors. Because of the defendant, Bolivia's life was taken far too soon. It was the defendant's bullet that killed Bolivia. She was killed as part of a senseless gang war between MBG and Killbrook members in a shooting that never needed to happen. No sentence this Court imposes can bring back Bolivia, but a life sentence is a necessary part of providing just punishment for the defendant taking Bolivia's life. *See* 18 U.S.C. § 3553(a)(2)(A).

With respect to Counts One and Three, the Government respectfully submits that the Court should impose additional terms of life imprisonment in light of the serious nature of the defendant's conduct, the grave consequences of his actions, and the need to provide closure and justice to Bolivia's family. In broad daylight, in a residential area of the Bronx, the defendant and his brother unleashed gunfire in the direction of Colon, Bolivia and Colon's two elderly grandparents. In other words, the defendant placed many people in danger when he and his brother decided to try and kill Colon. Colon's grandparents were possible victims, Colon was a possible victim, and anyone else who happened to be walking by during the shooting was a possible victim. A life sentence is therefore necessary to incapacitate the defendant from engaging in such heinous conduct that reflects a complete disregard for the safety of others. *See* 18 U.S.C. § 3553(a)(2)(B)-(C).

---

[1] Rodriguez likely misheard Kareem Davis, as the evidence at trial was that Kareem used a .22, not .32 caliber firearm. (Tr. 259).

Hon. Lorna G. Schofield
June 2, 2021
Page **4** of **4**

  The defendant's criminal history and other criminal conduct also justify life sentences on Counts One and Three.  The defendant has past convictions for drugs, firearms possession, and robbery.  In addition, at trial, both Gary Davis and Jose Rodriguez testified to other robberies the defendant committed as part of his membership in Killbrook.  These witnesses also testified that the defendant sold crack cocaine throughout Mill Brook.  In other words, while the murder of Bolivia was the most serious crime the defendant committed, it was not his only crime.  A life sentence is therefore warranted in light of the history and characteristics of the defendant.

## **Conclusion**

  For the forgoing reasons, a sentence of life imprisonment is statutorily mandated and appropriate.  In addition, although not required, the Court should impose terms of life imprisonment on Counts One and Three in light of the Section 3553(a) factors.

         Respectfully submitted,

         AUDREY STRAUSS
         United States Attorney

    by:  /s/
         Alexandra N. Rothman
         Jordan Estes
         Christopher Clore
         Assistant United States Attorneys
         (212) 637-2580